UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| JESSE R. HARDIN, | |
| Plaintiff, | |
| v. | CAUSE NO.: 3:24-CV-840-TLS |
| FRANK BISIGNANO, Commissioner of the Social Security Administration, | |
| Defendant. | |

**OPINION AND ORDER**

The Plaintiff Jesse R. Hardin seeks review of the final decision of the Commissioner of the Social Security Administration denying his application for disability insurance benefits. The Plaintiff argues that the Administrative Law Judge (ALJ) erred in evaluating the medical opinions, resulting in an RFC not supported by the evidence. For the reasons set forth below, the Court finds that reversal and remand for further proceedings is required.

**PROCEDURAL BACKGROUND**

On January 17, 2023, the Plaintiff filed an application for disability insurance benefits, alleging disability beginning on October 9, 2020. AR 25, ECF No. 6. After the claim was denied initially and on reconsideration, the Plaintiff requested a hearing, which was held before the ALJ on April 17, 2024. *Id.* On May 8, 2024, the ALJ issued a written decision, finding the Plaintiff not disabled. AR 25–36. The Plaintiff sought review by the Appeals Council, which subsequently denied review. AR 1–6. Thus, the ALJ's decision is the final decision of the Commissioner. *Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019). The Plaintiff now seeks judicial review under 42 U.S.C. § 405(g). On October 15, 2024, the Plaintiff filed his Complaint [ECF No. 1] in this Court, seeking reversal of the Commissioner's final decision. The Plaintiff

filed an opening brief, the Commissioner filed a response, and the Plaintiff filed a reply. ECF Nos. 13, 20, 21.

**THE ALJ'S DECISION**

For purposes of disability insurance benefits, a claimant is "disabled" if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see* 20 C.F.R. § 404.1505(a). To be found disabled, a claimant must have a severe physical or mental impairment that prevents him from doing not only his previous work, but also any other kind of gainful employment that exists in the national economy, considering his age, education, and work experience. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a). An ALJ conducts a five-step inquiry to determine whether a claimant is disabled. 20 C.F.R. § 404.1520.

The first step is to determine whether the claimant is no longer engaged in substantial gainful activity. *Id.* § 404.1520(a)(4)(i), (b). In this case, the ALJ found that the Plaintiff had not engaged in substantial gainful activity since October 9, 2020, the alleged onset date. AR 27.

At step two, the ALJ determines whether the claimant has a "severe impairment." 20 C.F.R. § 404.1520(a)(4)(ii), (c). Here, the ALJ determined that the Plaintiff has the severe impairments of post-traumatic stress disorder (PTSD); depressive disorder; sleep apnea; migraines; tinnitus; right and left shoulder and elbow arthritis; and cervical degenerative disc disease. AR 27.

Step three requires the ALJ to consider whether the claimant's impairment(s) "meets or equals one of [the] listings [in appendix 1 to subpart P of part 404 of this chapter]." 20 C.F.R. § 404.1520(a)(4)(iii), (d). If a claimant's impairment(s), considered singly or in combination

with other impairments, meets or equals a listed impairment, the claimant will be found disabled without considering age, education, and work experience. *Id*. § 404.1520(a)(4)(iii), (d). Here, the ALJ found that the Plaintiff does not have an impairment or combination of impairments that meets or medically equals a listing, indicating that she considered Listings 1.18, 3.00, 12.04, and 12.15. AR 27–28.

When a claimant's impairments do not meet or equal a listing, the ALJ determines the claimant's "residual functional capacity" (RFC), which "is an administrative assessment of what work-related activities an individual can perform despite [the individual's] limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001); *see* 20 C.F.R. § 404.1520(e). In this case, the ALJ assessed the following mental RFC, which is at issue on this appeal:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to . . . understand, remember, and carryout detailed, but not complex tasks; the claimant can attend to tasks for a sufficient period to complete tasks; the claimant can manage the stresses involved with detailed work-related tasks; the claimant is limited to occasional contact with coworkers and supervisors, but to limit the duration and intensity of such interactions there should be no tandem work or team tasks; [and] the claimant is limited to no more than occasional interaction with the general public. . . .

AR 29.

The ALJ then moves to step four and determines whether the claimant can do his past relevant work given the RFC. 20 C.F.R. § 404.1520(a)(4)(iv), (f). In this case, the ALJ found that the Plaintiff is unable to perform any past relevant work under 20 C.F.R. § 404.1565. AR 34.

If the claimant is unable to perform past relevant work, the ALJ considers at step five whether the claimant can "make an adjustment to other work" given the RFC and the claimant's age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v), (g). Here, the ALJ found that the Plaintiff is not disabled because the Plaintiff can perform significant jobs in the national economy of retail marker, routing clerk, and shipping and receiving weigher. AR 35. The

claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski v. Halter*, 245 F.3d 881, 885–86 (7th Cir. 2001); *see* 20 C.F.R. § 404.1512.

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the agency's final decision. 42 U.S.C. § 405(g). On review, a court considers whether the ALJ applied the correct legal standard and whether the decision is supported by substantial evidence. *See Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017); 42 U.S.C. § 405(g). A court will affirm the Commissioner's findings of fact and denial of disability benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (citations omitted). Even if "reasonable minds could differ" about the disability status of the claimant, the court must affirm the Commissioner's decision if it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (quoting *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007)).

The court considers the entire administrative record but does not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [the court's] own judgment for that of the Commissioner." *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011) (quoting *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). Nevertheless, the court conducts a "critical review of the evidence," and "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez*, 336 F.3d at 539 (citations omitted); *see Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014) ("A decision that lacks adequate discussion of the issues will be remanded."). The ALJ is not required to address every piece of evidence or testimony presented, but the ALJ "has a basic obligation to develop a full and fair record and

must build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) (cleaned up). However, "if the Commissioner commits an error of law," remand is warranted "without regard to the volume of evidence in support of the factual findings." *White ex rel. Smith v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

## ANALYSIS

On this appeal, the Plaintiff argues that the ALJ erred in formulating his RFC by failing to properly assess the medical opinions of the state-agency reviewing psychologists and the Plaintiff's treating psychologist. The Defendant responds that the ALJ sufficiently considered the record and articulated her decision and that the decision is supported by substantial evidence. The Court finds that remand is required for the ALJ to properly assess the state-agency reviewing psychologists' opinions.

An RFC is a measure of what an individual can do despite his limitations. *Young v. Barnhart*, 362 F.3d 995, 1000–01 (7th Cir. 2004); 20 C.F.R. § 404.1545(a)(1). The "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The relevant evidence of the individual's ability to do work-related activities includes the claimant's medical history; medical signs and laboratory findings; the effects of treatment; reports of daily activities; lay evidence; recorded observations; medical source statements; the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment; evidence from attempts to work; need for a structured living

5

environment; and work evaluations, if available. *Id*. at *5. "[B]oth the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record." *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014). The determination of a claimant's RFC is a legal decision rather than a medical one. *Thomas v. Colvin*, 745 F.3d 802, 808 (7th Cir. 2014) (citing 20 C.F.R. § 404.1527(d)).

In assessing the mental RFC, the state-agency psychological consultants complete a "Mental Residual Functional Capacity" form that has two relevant sections: (1) what is often referred to as a "checkbox" worksheet to rate the claimant's limitations in several subareas of the four broad areas of mental functioning of understanding and memory, sustained concentration and persistence, social interaction, and adaptation and (2) a narrative section titled "MRFC Additional Explanation" that contains a written assessment of the claimant's mental RFC. *See* AR 81–82, 92–94; *Timothy O. v. Kijakazi*, No. 3:20-CV-229, 2023 WL 11960421, at *2 (S.D. Ind. Apr. 21, 2023) (citing POMS: DI 25020.0010(B)(1); *DeCamp v. Berryhill*, 916 F.3d 671, 675–76 (7th Cir. 2019)). "The ALJ must consider whether the consultants' narrative RFC assessments 'adequately encapsulate[d] and translate[d]' the checklist." *Pavlicek v. Saul*, 994 F.3d 777, 783 (7th Cir. 2021) (quoting *Varga v. Colvin*, 794 F.3d 809, 816 (7th Cir. 2015)). While the ALJ must consider the state-agency psychologists' findings, she is not required to adopt them. *See* 20 C.F.R. §§ 404.1513(a)(2)(ii), 404.1520b, 404.1520c.

Here, the Plaintiff argues that the state-agency reviewing psychologists' opinions, both in the checkbox and the narrative sections, require more restrictive concentration-related and social interaction limitations that those incorporated in the RFC. And, as a result, the ALJ's step five determination is not supported by sufficient evidence because the hypotheticals posed to the vocational expert were based on an RFC that was not supported by the evidence.

The Plaintiff has a history of mental health treatment for PTSD and depression at the VA Outpatient Clinic. *See* AR 328–339 (Ex. 8F), 340–508 (Ex. 9F). In June 2021, the Plaintiff reported "severe anxiety" and that he "sometimes gets so overwhelmed [he] can't get out of bed." AR 481. He reported that he "avoids people and anywhere he may feel uncomfortable to avoid becoming angry." AR 483. He further reported poor memory and poor sleep due to nightmares from his time in the army. *Id.* He was referred to a therapist for behavioral activation or reprocessing. AR 481. In July 2021, he began treating with Dr. Stronczek, who diagnosed PTSD and depression. AR 475. The Plaintiff reported that he previously had a good job but he "got into physical fights a few times and eventually realized he had to leave the job." AR 480. Although Dr. Stronczek noted many normal findings, she noted anxious mood with tangential and pressured thought process. AR 479. She made similar findings over the next year. *See* AR 443 (June 2022), 449 (Apr. 2022), 459 (Feb. 2022), 473 (Aug. 2021). In February 2022, the Plaintiff complained of extreme social anxiety and that he mostly stays home because of hypervigilance and the propensity for physical altercations. AR 459.

When he began cognitive processing therapy for PTSD, he described his most traumatic event as having to shoot into a crowd during a riot. AR 450. At another session, he indicated he could not control his own reactions and that he was "broken and cannot be fixed." AR 445. In September 2022, Dr. Stronczek issued an opinion, recognizing that his PTSD was "due to combat," recognizing his symptoms such as traumas, flashbacks, intrusive thoughts, avoidance of things that remind him of the traumas, intense physical and psychological upset when reminded of traumas, loss of interest in things he used to enjoy, emotional numbing, anger, irritability, sleep disturbance, exaggerated startle response, and hypervigilance. AR 282. She noted that his symptoms had negatively impacted his capacity for work and relationships with

7

others. *Id.* Although he was discharged from cognitive processing therapy in March 2023, AR 339, in June 2023, he presented for a psychiatric appointment for medication management at the VA, endorsing symptoms of PTSD and depression, AR 331. He reported being angry and irritable, being triggered by war movies, having low energy and motivation, and having the most difficulty with sleep, anxiety, and motivation, causing him to be in a constant state of fatigue. *Id.*

In March 2023, state-agency psychologist B. Randal Horton, Psy.D., reviewed the record and found the Plaintiff not significantly limited in most of the "checkbox" areas. AR 81–82. However, for the "sustained concentration and persistence limitations," Dr. Horton assessed a moderate limitation in "[t]he ability to work in coordination with or in proximity to others without being distracted by them" and "[t]he ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." AR 81. And, in the "social interaction limitations," Dr. Horton found a moderate limitation in "[t]he ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes." AR 82. In the narrative "MRFC Additional Explanation," Dr. Horton found that the Plaintiff "retains the capacity to complete complex forms of work that does not require intense and frequent interactions with others." *Id.*

In August 2023, state agency psychologist Donna Unversaw, Ph.D. reviewed the record on reconsideration and found the same three moderate "checkbox" limitations. AR 93. She additionally found a moderate limitation in the "sustained concentration and persistence limitation" areas of "[t]he ability to carry out detailed instructions" and "[t]he ability to maintain attention and concentration for extended periods" and in the "social interaction limitation" area

8

of the "ability to interact appropriately with the general public." *Id.* In the narrative section, Dr. Unversaw affirmed Dr. Horton's mental RFC assessment. AR 94.

As noted above, the ALJ assessed the Plaintiff with the mental RFC to (1) understand, remember, and carry out detailed, but not complex, tasks, (2) attend to tasks for a sufficient period to complete them, (3) manage the stresses involved with detailed, work-related tasks, (4) maintain only occasional contact with coworkers and supervisors, but the duration and intensity of that contact would be limited to no tandem work or team tasks, and (5) maintain no more than occasional interaction with the public. AR 29. In the mental RFC discussion, the ALJ found the state-agency psychologists' opinions "mostly persuasive," finding that they were consistent with and supported by the lack of inpatient psychiatric treatment as well as the objective mental status findings that "are absent significant abnormality as to cognition (focus, memory, attention, etc.) or ability to interact appropriately with his health care clinicians." AR 33. The ALJ concluded that the opinions "are persuasive insofar as they are consistent with the assessed mental RFC. *Id.* The Plaintiff makes two challenges to this mental RFC determination.

First, the Plaintiff argues that the ALJ departed, without explanation, from the narrative opinions as to the limitation on the intensity and frequency of social interactions. The state-agency psychologists' narratives found the Plaintiff "retains the capacity to complete complex forms of work that do not require intense and frequent interactions with others." The ALJ's RFC limits the Plaintiff's interactions by making them "occasional" (meaning up to one-third of an eight-hour workday), SSR 96-9p, 1996 WL 374185, at *3 (July 2, 1996) ("'Occasionally' means occurring from very little up to one-third of the time, and would generally total no more than about 2 hours of an 8-hour workday."); SSR 83-10, 1983 WL 31251, at *5 (Jan. 1, 1983) (same), and by precluding "tandem work and team tasks." However, there is no explanation why, as to

9

coworkers, a limitation to no "tandem work and team tasks" would prevent the Plaintiff from working with others for a third of the workday in "intense interactions" during that time. Although it seems reasonable that "tandem work and team tasks" are forms of "intense interactions" with coworkers, they are not the only such forms.

More importantly, the limitation says nothing about the intensity of interactions with supervisors. While the RFC limits contact with supervisors to only occasionally, there is no qualitative restriction. The limitation on "the duration and intensity" of the occasional contact with "no tandem work or team tasks" speaks only to interaction with coworkers but not with supervisors. The Defendant offers no substantive response to this argument regarding the qualitative nature of the Plaintiff's interactions with coworkers and supervisors as opined in the state agency psychologists' narrative statements.

Second, the Plaintiff argues that the ALJ erred by failing to address the state-agency reviewing psychologists' moderate "checkbox" limitations related to concentration, persistence, or pace and social interactions, specifically that the Plaintiff would be prone, at least some of the time, to needing extended or additional breaks, to periods of distraction during which he would be off task, to absences, and to exhibiting inappropriate "behavioral extremes." The Defendant responds that the ALJ accounted for those checkbox limitations by adopting the state-agency psychologists' narrative opinion. Indeed, an ALJ may rely on the narrative opinion where it adequately translates the moderate checkbox ratings. *Johansen v. Barnhart*, 314 F.3 283, 289 (7th Cir. 2002); *Pavlicek*, 994 F.3d at 783 (affirming where the ALJ relied on state-agency psychologists who translated the finding of pace limitation to a specific restriction). However, the ALJ may not rely on a narrative opinion, without further explanation, if the narrative does not include the checkbox findings. *DeCamp*, 916 F.3d at 676 (recognizing that, although an ALJ

10

may rely on the narrative statement, "the ALJ still must adequately account for limitations identified elsewhere in the record, including specific questions raised in check-box sections of standardized forms"); *Yurt*, 758 F.3d at 854–55, 859 (reversing because the ALJ did not adequately account for limitations identified in the checkbox section).

While the ALJ discussed and adopted the limitations in the state-agency psychologists' narrative statements, the ALJ did not discuss any of the moderate checkbox limitations. The ALJ also did not incorporate into the RFC or the hypothetical questions to the vocational expert any of these checkbox limitations regarding an unreasonable number and length of rest periods, absences, working in proximity to others without being distracted by them, or exhibiting behavioral extremes when getting along with coworkers. Nor did the ALJ discuss whether she found that the state-agency psychologists had incorporated these checkbox limitations in the narrative opinion. *See DeCamp*, 916 F.3d at 676; *see also Monday v. Comm'r of Soc. Sec.*, No. 4:23-CV-96, 2025 WL 865146, at *7 (N.D. Ind. Mar. 20, 2025) (citing *Donald G. v. Kijakazi*, No. 3:21-CV-164, 2023 WL 2957448, at *8 (S.D. Ind. Feb. 16, 2023); *Timothy O.*, 2023 WL 11960421).

The narrative opinion that the Plaintiff has the ability "to complete complex forms of work that does not require intense and frequent interactions with others" does not indicate that the Plaintiff would never be absent, off-task, late, require additional breaks, or exhibit behavioral extremes simply because there were no intense and frequent interactions. Nor does the narrative opinion indicate any capacity to complete complex forms of work for a defined period without disruption or to do so at a "consistent pace." Similarly, the RFC does not incorporate any occurrence of a psychologically induced need for extended or more frequent breaks, nor does it account for PTSD and depression-induced social isolation, lack of motivation, and irritability

that might result in absences or a need to arrive late or leave early on occasion. The RFC also does not account for concerns about the Plaintiff's behavioral extremes, which is supported by his history of PTSD and physical altercations at an earlier job.

The Plaintiff reasons that the failure to explain the rejection of these moderate limitations was harmful because the vocational expert testified that more than a single instance of either an absence or arriving late/leaving early per month or being off-task just fifteen percent of the time during an eight-hour workday would result in an inability to perform any jobs in the national economy. AR 72; *see Moy v. Bisignano*, 142 F.4th 546, 552–54 (7th Cir. 2025) (finding the RFC for the ability to "work at a consistent production pace" failed to account for the plaintiff's moderate limitations in concentration, persistence, and pace where the plaintiff had difficulty focusing, had flashbacks and hallucinations, and demonstrated "distractible attention during psychotherapy visits" and the vocational expert testified that being off task for fifteen percent of the workday would preclude work).

Again, "occasional contact with coworkers and supervisors" means up to one-third of the eight-hour workday, or approximately two hours. *See* SSR 96-9p, 1996 WL 374185, at *3; SSR 83-10, 1983 WL 31251, at *5. And, while the ALJ concluded the Plaintiff is capable of occasional interactions with coworkers and supervisors, the ALJ failed to pose a hypothetical with an individual who exhibits limitations in the ability to get along with coworkers without distracting them or exhibiting behavioral extremes. The ALJ did not explain how the state-agency psychologists' narrative opinions encapsulate the moderate limitations in the ability to complete a normal workday and workweek, to perform at a consistent pace without an unreasonable number and length of rest periods, work in proximity to others without being distracted by them, and to get along with coworkers without distracting them or exhibiting

12

behavioral extremes. *See* 20 C.F.R. § 404.1520c(b) ("[Adjudicators" will articulate in [the] . . . decision how persuasive [they] find all of the medical opinions and all of the prior administrative medical findings in [the claimant's] case record.").

This is not, as argued by the Defendant, an instance where the Plaintiff "mistakenly presumes that the psychologists' answers to the checklist section outweigh the narrative opinion section." *Dudley v. Berryhill*, 773 F. App'x 838, 842–43 (7th Cir. 2019); *see Urbanek v. Saul*, 796 F. App'x 910, 915 (7th Cir. 2019) ("Although checklist observations cannot be ignored, they are 'perhaps less useful to an ALJ' than a doctor's narrative summary and do not outweigh the narrative opinions.'" (quoting *Varga*, 794 F.3d at 816)). Nor is this case like *Gedatus v. Saul*, 994 F.3d 893, 905 (7th Cir. 2021), cited by the Defendant to argue that the Plaintiff has not met his burden of identifying medical evidence to support the limitation of being off-task. In *Gedatus*, the plaintiff had not cited *any* medical opinion setting greater limits than the RFC, and the ALJ gave good reasons for weighing the state-agency physicians' opinions. *Id.* at 904–05. In contrast, the Plaintiff in this case has cited the moderate limitations in the checkbox section of the state-agency reviewing psychologists' opinions, which the ALJ did not discuss.

The cases cited by the Defendant are distinguishable because the state-agency psychologists incorporated the moderate checkbox limitations in their narrative opinions. *See Pavlicek*, 994 F.3d at 783 (finding that "the ALJ reasonably relied on the narrative RFC because it was in fact consistent with the 'moderate' checklist ratings," relying in part on the new regulatory definition of a "moderate limitation" to mean that functioning in an area is "fair," citing 20 C.F.R. Pt. 404, Subpt. P, App. 1, but also finding the moderate checkbox limitations in maintaining concentration and working at a consistent pace were addressed by the narrative opinion that included the ability to "perform at a consistent pace particularly if is [sic] engaged in

a simple, repetitive tasks [sic]"); *Pytlewski v. Saul*, 791 F. App'x 611, 616 (7th Cir. 2019) (affirming the ALJ's decision to rely on the state-agency psychologists' functional capacity opinion where the checkboxes were "consistent with [the state-agency psychologists'] narratives"); *Peeters v. Saul*, 975 F.3d 639, 642 (7th Cir. 2020) (affirming the ALJ's RFC because it relied on the state-agency psychologists, who found the claimant could perform simple, routine, repetitive work, despite his moderate checkbox limitations); *Hess v. O'Malley*, 92 F.4th 671, 678 (7th Cir. 2024) (finding the RFC accounted for moderate checkbox limitations).

Remand is required for the ALJ to address the moderate checkbox limitations regarding time off task, absences, distraction, and behavioral extremes. Because remand is required on this basis, the Court does not reach the Plaintiff's argument regarding the ALJ's consideration of the treating psychologist's opinion.

## CONCLUSION

For the reasons stated above, the Court GRANTS the relief sought in the Plaintiff's Brief [ECF No. 13] and REVERSES the decision of the Commissioner of the Social Security Administration. The Court REMANDS this matter for further proceedings consistent with this Opinion.

SO ORDERED on February 9, 2026.

        s/ Theresa L. Springmann
        JUDGE THERESA L. SPRINGMANN
        UNITED STATES DISTRICT COURT